OPINION. MuRdock, Judge: The first issue relates to the deduction for depletion allowable to Neville for each of the taxable years. Neville elected to take percentage depletion and the Commissioner has allowed a deduction computed under that method. The only difference between the parties is as to the “gross income from the property.” Neville contends that its “percentage depletion should be calculated in exactly the same manner as if it had used an organization of its own to operate the properties, Oliver’s function being simply that of an operating agent, acting for a commission and compensation for use ,of equipment.” It argues that Oliver sold the ore from these two mines for the account of Neville, so that Neville’s gross income from the properties for the purpose of percentage depletion is the actual sale price of the ore sold in each year under the operating contract. The petitioner cites and relies upon Commissioner v. Happold, 141 Fed. (2d) 199; Reynolds v. McMurray, 60 Fed. (2d) 843; certiorari denied, 287 U. S. 664; Helvering v. Armstrong, 69 Fed. (2d) 370; Barnhart-Morrow Consolidated, 47 B. T. A. 590; J. A. Abercrombie Co., 7 T. C. 120; affd., 162 Fed. (2d) 338. It was held in these cases that the gross income of each owner was his proportionate part of the gross income of the mineral property, and he was entitled to deduct his proportionate share of the operating expenses. That was despite the fact that the owner took no part in the operation of the property and received only a net amount after payment of all charges. An operating company in each of those cases had exclusive control over the operation ,of the properties, and it produced the minerals, sold them, and paid the owner his proportionate share after deducting all expenses and charges. The deductions which the Commissioner allowed were computed upon the actual amount which Oliver paid to Neville for each year under the operating contract, and the Commissioner argues that those amounts were Neville’s gross income from the property. He does not suggest any theory, however, upon which his determination could be properly sustained. If he contended that Neville had leased its property to Oliver for a rent, then Neville’s gross income from the property would be limited to the rent plus any obligation of Neville’s, such as real estate taxes, paid by Oliver. Helvering v. Twin Bell Oil Syndicate, 293 U. S. 312; Commissioner v. Felix Oil Co., 144 Fed. (2d) 276; Eastern Coal Corporation v. Yoke, 67 Fed. Supp. 166. However, he has expressly disavowed any contention that the operating contract is a lease or an assignment of a lease. Neville’s gross income from the property would likewise be limited to the net amount received from Oliver, plus obligations of Neville paid by Oliver, if Neville had sold the ore to Oliver at a price which allowed for the operating expenses, because in that case the purchaser would be carrying on the operations solely for its own benefit. Mountain Producers Corporation, 34 B. T. A. 409; affd., 303 U. S. 376. But the facts here distinguished the present case from the one just cited. Likewise the Commissioner might be in a stronger position if he contended, successfully, that Neville and Oliver were joint venturers. He makes no such contention. Instead of taking any of those positions, the Commissioner seems to agree that Oliver was an agent of Neville, and he fails to distinguish the cases cited by the petitioner in which the operator was regarded as an agent for the inactive co-owner. Income from a property operated by an agent is income of the owner, regardless of how independent the agent may be. Neville was the sole owner and Oliver had no title of any kind to the property, whereas, in the cases cited by the petitioner, a nonoperating owner, corresponding to Neville, had only a percentage of ownership, and the operating company, corresponding to Oliver, was a part owner. But that difference does not distinguish the cases in principle. Where a property is operated by one for the benefit of another which owns an interest in the property, the gross income of the latter from the property is not limited to the net amount received from the operator. Each owner must report his proportionate share of the gross sales and is entitled to deduct his proportionate share of all expenses and other amounts allowed as deductions under the Internal Revenue Code. His deduction for percentage depletion is based upon the gross income before the deductions mentioned. Every argument which the respondent makes in the present case would have been applicable in the cases cited by the petitioner. Indeed, the respondent was the winning party in several of those cases and successfully resisted the very arguments he now makes. This point is decided for the petitioner upon authority of (he cases cited by the petitioner. The lease involved in the second issue had become burdensome and valueless. Neville terminated it in 1936 without any strings or conditions attached. That closed the taxable transaction which it had in that lease and it thereby sustained a loss of the stipulated remaining cost. The respondent cites no cases to the contrary, but argues (hat Neville had no loss in 1936 because it merely carried out a plan for obtaining a better title to the ore property by surrendering the lease and purchasing the fee. If Neville had used the lease or its rights thereunder to acquire the fee, the remaining cost of the lease might be regarded as a part of the cost of the fee, but that was not done. Instead the lease was canceled and the fee was purchased later. There was no understanding when the lease was canceled that Neville would purchase the fee. It had plans and desires for such a purchase, but it had no understanding or agreement with the owner-lessors. Indeed, it was necessary that the lease should be canceled in order to terminate the rights of Chisholm. Neville did not want to buy the fee until those rights had been terminated. The negotiations for purchase were started anew from scratch after the termination of the lease. The fact that Neville was willing to pay $40,000 for the fee is not inconsistent with the fact that the lease was a liability to Neville. The one had value, the other had none. The fee was purchased for a different purpose from that for which the lease had been acquired. There was no connection between the acquisition of the fee and the termination of the lease which would prevent the loss from the latter transaction from being recognized for tax purposes. Decision will be entered under Rule 50.